**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER MICHAEL W.,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security Administration,<br>Defendant. | Case No. 5:25-cv-01793-PD<br>**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION** |

Plaintiff challenges the denial of his applications for Disability Insurance Benefits and Supplemental Security Income Benefits.[1] For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

## I. Pertinent Procedural History and Disputed Issue

On February 10, 2022, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits ("SSI") under

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

Titles II and XVI of the Social Security Act ("SSA"), alleging disability since March 8, 2021. Administrative Record ("AR") 18, 349-65.[2] Plaintiff's application was denied at the initial and reconsideration levels, and Plaintiff timely filed a request for hearing on January 16, 2023. AR 58-127, 187-88. On September 12, 2023, a hearing was held before an Administrative Law Judge ("ALJ"). Plaintiff appeared with counsel and the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). AR 41-57. On September 27, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. AR 128-44. On October 6, 2023, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, and on November 16, 2023, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for further proceedings. AR 150-57.

On May 6, 2024, the ALJ held a second hearing, at which Plaintiff and a VE testified. AR 2011-37. On July 22, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. AR 14-32. The Appeals Council denied Plaintiff's request for review on May 28, 2025, rendering the ALJ's decision the final decision of the Commissioner. AR 1-6.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2026, and had

---

[2] The Administrative Record is CM/ECF Docket Numbers 8-1 through 8-14. Plaintiff's Opening Brief is at Docket Number 12, the Commissioner's Brief is at Docket Number 16, and Plaintiff's Reply Brief is at Docket Number 17.

not engaged in substantial gainful activity since his alleged onset date, March 8, 2021. AR 20 ¶¶ 1, 2.

At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease (DDD) of the lumbar spine, carpal tunnel syndrome (CTS), peripheral neuropathy and arthritis in the right knee (20 CFR 404.1520(c) and 416.920(c))." AR 20 ¶ 3. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 20.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). AR 24 ¶ 4.

Before proceeding to step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes or scaffolds; and he can occasionally handle and finger.

AR 24 ¶ 5.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 30 ¶ 6. At step five, the ALJ made findings of Plaintiff's vocational profile. The ALJ noted that Plaintiff was born in January 1980, and was 41 years old, which is defined as a younger individual, on the alleged disability onset date, and that Plaintiff has at least a high school education. AR 30-31 ¶¶ 7, 8. The ALJ treated the question of transferability of job skills as not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). AR 31 ¶ 9. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff could have performed. AR 31 ¶ 10. Relying on the testimony of the VE, the ALJ concluded that Plaintiff could have worked as a school bus operator, investigator dealer accounts, and school crossing guard. AR 31. Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the SSA since March 8, 2021, through the date of decision. AR 32 ¶ 11.

Plaintiff raises the following four issues:

(1) Whether the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of pain and physical dysfunction.

(2) Whether the ALJ failed to provide a supported RFC finding when it contained no accommodations for the use of an assistive device and the finding was absent of any accommodations for Plaintiff's assessed mental limitations.

(3) Whether the ALJ erred in failing to adequately develop the record by not seeking updated evidence about Plaintiff's functional abilities.

(4) Whether the ALJ erred at step five by not identifying full-time jobs that Plaintiff could perform that exist in significant numbers in the national economy.

Dkt. No. 12.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a

whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Plaintiff alleges that the ALJ failed to provide specific, clear, and convincing reasons to discount his subjective symptom testimony of pain and physical dysfunction. Dkt. Nos. 12 at 7-18; 17 at 2-7.

---

[3] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

**1. Legal Standard**

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same). An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of

credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

### 2. Plaintiff's Subjective Symptom Testimony

#### a) Plaintiff's Testimony

At the hearing, Plaintiff testified as follows: Plaintiff alleged that he was disabled due to lumbar pain, knee pain, leg pain and numbness from neuropathy, carpel tunnel symptoms, an ostomy bag from stomach surgery, and mental health symptoms. AR 48, 50, 54, 2028. He testified that his back and knee pain came from an injury on a worksite. AR 48. He stated that he feels pain if he walks too much and can only stand and walk for 30-45 minutes. AR 2025. He also feels pain if he sits down too long, especially in a car. AR 49. He stated that his back pain prevents him from bending over to

pick up things. AR 53. Plaintiff was asked whether he still uses a cane when he walks and responded, "[n]ot all the time. Only when I'm having pain in my legs." AR 2025. Plaintiff further stated that since his carpal tunnel surgery, he finds it painful to use the cane, which forces him to choose between pain in his hand and wrist, or pain in his legs and unsteadiness when ambulating. AR 2025-26. He stated that even after the carpal tunnel surgery he still has numbness, tenderness and pain, and stiff fingers that get stuck, which all make many tasks using his hands difficult. AR 2026-27. He testified that because of his hands and back, his ability to lift weight is limited. AR 2027.

Plaintiff testified that he improved from a sigmoidectomy and subsequent colostomy during the period at issue; however, he still has an ostomy bag that leaks sometimes and comes off, which he said is "nasty" and can cause him problems. AR 2029. He also has taken mental health medications. AR 54.

Plaintiff stated that he does household chores like vacuuming, laundry, cooking, and grocery shopping. AR 50. He reported that he is able to drive and go to medical appointments but has pain if he has to sit in the car for too long. AR 49-50. He reported that he goes outside to the park when he can. AR 50.

### 3. The ALJ's Decision

> [Plaintiff] testified that he had a back injury and right knee injury; if he walks too much, he gets back pain, but he can stand 30-45 minutes and can walk about two miles, or 30-40 minutes. He admitted that he does not use a cane unless he is having extra pain in his leg or if he knows he will have to do a lot of walking; but he has been having problems using the cane since his carpal tunnel surgery. He explained that he had carpal tunnel release on both hands, and they feel better but still get numb, his hands still need to heal, and he still has tenderness and pain. He stated that sometimes his fingers get stiff and get stuck, he has problems opening bottles, but he can cook, tie shoes, and button buttons. He asserted that he could lift twenty pounds, he has recovered since his stomach surgery,

> but he still has an ostomy that leaks sometimes and comes off, which can be nasty. He said he is supposed to have an appointment to see if they can reverse it soon. He explained that he has naproxen for pain but does not take it more than every once in a while, but he takes gabapentin every day for nerve pain and to help with depression and anxiety.
>
> Despite the alleged impairment, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction. [Plaintiff] admitted activities of daily living including, he does dishes, laundry, vacuums, walks to the park, exercises, fixes himself meals, does the grocery shopping, rides a bike, and does yardwork. He drives (Exhibit 6F, p. 6) and was at the lake (Exhibit 20F, p. 9). He testified that he also goes to doctor appointments, listens to the radio, smokes marijuana, and sweeps.

AR 25.

### 4. Analysis

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for discounting his subjective complaints, with respect to his physical and mental limitations. Dkt. No. 12 at 7-18. "A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's [RFC].... The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work." *Ferguson*, 95 F.4th at 1198 (internal citations omitted). "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work." *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony. *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01. The ALJ may not simply make the conclusory statement that Plaintiff's testimony is not credible because it is inconsistent with the record and then proceed with an RFC analysis. *Brown-Hunter*, 806 F.3d at 493-94. This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination. *Id.*

Here, the ALJ found that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, carpal tunnel syndrome, peripheral neuropathy and arthritis in the right knee. AR 20 ¶ 2. The ALJ further found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but also found that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence in the record. AR 26.

In this case, the ALJ did not find that Plaintiff had engaged in any degree of malingering and therefore was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms. *Trevizo,* 871 F.3d at 678. The Commissioner argues that the ALJ discounted Plaintiff's subjective symptom testimony based on the objective medical evidence, Plaintiff's inconsistent statements, daily activities, and improvement with treatment. Dkt. No. 16. The Court considers each in turn.

**a) Objective Medical Evidence**

Plaintiff testified that he is unable to engage in work activities due to lumbar pain, knee pain, leg pain, numbness from neuropathy, carpal tunnel symptoms, an ostomy bag from stomach surgery, and mental health symptoms. Dkt. No. 12 at 7 (citing AR 48, 50, 54, 2028). Plaintiff testified that his back and knee pain came from an injury on a worksite. AR 48. Plaintiff argues that the ALJ's main rationale for discounting his subjective symptom testimony is that his statements of pain were inconsistent with the medical evidence. *Id.* at 13.

First, the ALJ summarized Plaintiff's statements and concluded that his statements were not consistent with the objective medical evidence and other evidence in the record. AR 26. The ALJ then summarized the medical findings of record. AR 26-29. The ALJ noted that Plaintiff had rapid onset of bilateral lumbosacral paraspinal discomfort with radiation down to the right greater than left leg without direct traumatic onset on March 8, 2021; he had no midline spine tenderness, urinary or fecal incontinence, saddle paresthesia, or weakness to the extremities, and his gait was normal. AR 26 (citing AR 549-51). The ALJ highlighted a lumbar spine x-ray taken on March 22, 2021, that revealed only mild degenerative disc disease and an MRI of the lumbar spine taken on April 8, 2021, that showed mild stenosis, but alignment of the lumbar vertebrae is normal, which the ALJ explained supports an RFC limitation to a light exertion. AR 26 (citing AR 578-80).

The ALJ also noted that Plaintiff underwent a lumbar injection on July 19, 2021. AR 26 (citing AR 823). In addition, Plaintiff reported that on July 23, 2021, he had been in a low-speed motor vehicle accident and was having low back pain, which was improved with over-the-counter Ibuprofen and Tylenol. AR 26 (citing AR 554). The ALJ highlighted an examination that demonstrated Plaintiff was non-tender to palpation in the lumbosacral region,

his range of motion was intact, pelvis and hip were stable, his gait was steady and ambulatory, and he had normal motor strength, sensory and coordination. AR 26 (citing AR 556). The ALJ explained that Plaintiff's allegations regarding the severity of his symptoms and limitations were diminished because his allegations were greater than expected in light of the objective medical evidence. AR 26. In particular, the ALJ pointed to an examination on August 31, 2021, that found Plaintiff had normal movement of all extremities with moderate pain with lumbar rotation to the left and the right that is elicited by motion; he had tenderness over the spinous process from L3-L5 and palpation with paravertebral tenderness over lumbar facet joints bilaterally and moderate pain to flexion and extension at the waist; he had negative straight leg raising test bilaterally, and no tenderness of the sciatic notch; and no tenderness of the sacroiliac joints, pain over the greater trochanteric bursa, or trigger point pain with a negative Patrick's test. AR 26-27 (citing AR 819). The ALJ further noted that Plaintiff had normal bulk and tone, no tremors or bradykinesia, normal strength in the lower extremities with normal gait and station, negative straight leg raising test bilaterally, and deep tendon reflexes were 2+ bilaterally. AR 27 (citing AR 819).

The ALJ pointed out that Plaintiff had numbness in the left lower extremity on December 29, 2021, with radiating pain in the lower back to the center of his buttocks that is exacerbated most with bending or lifting. AR 27. The ALJ observed that Plaintiff completed twelve weeks of physical therapy which provided some relief and he continued to use the stretches for flare-ups. He was advised he was not a surgical candidate. AR 27 (citing AR 565).

The ALJ noted that Plaintiff underwent a lumbar epidural steroid injection on March 4, 2022, which gave him 70% relief of pain by March 18, 2022. AR 27 (citing AR 564-65). The ALJ also noted that Plaintiff had

another motor vehicle accident on March 27, 2022, and was ambulating on his own without issues. AR 27 (citing AR 619). Plaintiff's examination showed he had mild tenderness to palpation of the lumbar spine midline at the level of L3-4 with on step-offs, crepitus, or palpable mass with mild tenderness to palpation of the right lumbar paraspinal; and he was moving all extremities spontaneously and had no peripheral edema. AR 27 (citing AR 621).

The ALJ highlighted that objective clinical tests throughout the record have continuously exhibited findings that are consistent with Plaintiff's ability to perform a less than full range of light activity since his alleged onset date. AR 28. Specifically, x-rays of the right knee taken on July 1, 2022, were unremarkable. AR 28 (citing AR 845). Plaintiff stated medication was helpful with no adverse effects and moderately decreased his pain on July 11, 2022. AR 28 (citing AR 845). The ALJ also noted a brain MRI taken on August 1, 2022, was unremarkable. AR 28 (citing AR 1046). Further, an MRI of the right knee taken on August 30, 2022, indicated a nondisplaced flap tear of the posterior horn of the meniscus and no more than mild chondromalacia. AR 28 (citing AR 1157). The ALJ noted that while Plaintiff's range of motion in the lumbar spine on September 9, 2022, was decreased by 20%, it was normal in the hips and knees. AR 28 (citing AR 956). Further, the ALJ noted that Plaintiff stated he had improvement in symptoms with physical therapy. AR 28 (citing AR 957).

The ALJ noted that Plaintiff stated on September 22, 2022, that his left knee had numbness, tingling and weakness and he had pain in the right knee. AR 28 (citing AR 1183). A left knee x-ray on November 3, 2022, showed an old medial collateral ligament ("MCL") injury. AR 28 (citing AR 1156). The ALJ observed that Plaintiff stated on November 7, 2022, that his knee began to hurt when he fell at the lake in June of 2022. AR 28 (citing AR 1179).

The ALJ highlighted that Plaintiff underwent another lumbar spine injection on December 2, 2022. AR 28 (citing AR 993). Plaintiff further stated on December 6, 2022, that he has pain management and injections in the spine as well as the right knee and was getting better. AR 28 (citing AR 1101). The ALJ noted that Plaintiff was using a cane to ambulate on December 13, 2022. AR 28 (citing AR 1060).

The ALJ explained that Plaintiff's alleged symptoms are just not reasonably consistent with the medical evidence and other evidence in the record. AR 28. The ALJ noted that Plaintiff was negative for dizziness, headache, joint swelling, and muscle weakness on March 6, 2023. AR 28 (citing AR 1119). In addition, visual overview of all four extremities were normal with no edema, intact cranial nerves, and normal sensory and deep tendon reflexes. AR 28 (citing AR 1120). Further, the ALJ noted that an examination on May 17, 2023, found that Plaintiff had no muscle aches, soft tissue swelling, localized joint pain, or swelling, dizziness, vertigo, lightheadedness, fainting, memory lapses or loss, convulsion, motor disturbances and sensory disturbances. AR 28 (citing AR 1019).

The ALJ observed that an electromyogram, nerve conductive study of the upper extremities on October 29, 2021, demonstrated bilateral carpal tunnel syndrome. AR 27 (citing AR 631). The ALJ further noted that Plaintiff underwent a redo of left decompression of median nerve at the wrist with external neurolysis on October 13, 2023, with a postoperative diagnosis of recurrent left carpal tunnel syndrome. AR 28 (citing AR 1499). The ALJ also noted that Plaintiff was negative for arthralgias and back pain on October 15, 2023. AR 28 (citing AR 1830); he had normal range of motion on November 18, 2023. AR 28 (citing AR 1761); and he underwent physical therapy due to pain, weakness, numbness and tingling in the left hand in December of 2023 through January of 2024. AR 28 (citing AR 1421-45). The ALJ also noted

that Plaintiff underwent a decompression of the right median nerve of the wrist with external neurolysis on February 9, 2024, with a postoperative diagnosis of right carpal tunnel syndrome. AR 28 (citing AR 1500). The ALJ emphasized that the medical records dated February 14, 2024, noted that Plaintiff was "doing good" and had good coaptation in the hands. AR 28 (citing AR 1518, 1522).

The ALJ also pointed out that Plaintiff reported on February 20, 2024, that his right knee symptoms had improved, contributing to his ability to walk further distances, he had no pain, and was not taking any medication. AR 29. The ALJ also noted that Plaintiff's medical records indicated that Plaintiff had done well with treatment and was satisfied with his current condition. AR 29 (citing AR 1506).

The ALJ engaged in a lengthy discussion of the objective medical evidence, ultimately concluding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the medical evidence." AR 25-29. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). However, inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* Soc. Sec. Ruling ("SSR") 16-3p, at *5, 2017 WL 5180304 (March 2017) ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Therefore, the Court considers the other asserted factors.

**b) Plaintiff's Inconsistent Statements**

The Commissioner argues that the ALJ properly considered Plaintiff's prior statements in assessing the alleged severity of his physical symptoms and in partially discounting his subjective symptoms. Dkt. No. 16 at 14-15. The Commissioner states that "as to Plaintiff's back symptoms, the ALJ observed that Plaintiff alleged that he could stand 30-45 minutes and walk about two miles, or 30-40 minutes before experiencing pain." *Id.*, at 14 (citing AR 25, 49, 2025). The Commissioner also states as to Plaintiff's stomach symptoms, the ALJ noted that "Plaintiff recovered from his stomach surgery with placement of an ostomy and was able to lift twenty pounds." *Id.*, at 14-15 (citing AR 25, 2027-29). The Commissioner further states as to pain, the ALJ noted that Plaintiff took naproxen for pain "every once in a while" and gabapentin every day for nerve pain and to help with depression and anxiety. *Id.*, at 15 (citing AR 21, 2031-32).

The ALJ, however, did not cite to the above statements as a reason for discounting Plaintiff's subjective symptoms. The ALJ merely summarized Plaintiff's testimony as it pertained to his alleged pain and physical limitation. AR 25. The Court cannot consider post hoc rationalizations not offered by the ALJ. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**c) Daily Activities**

The Commissioner next asserts that the ALJ did not rely solely on the objective medical evidence, but discounted Plaintiff's testimony based on his daily activities. Dkt. No. 16 at 15-17. Inconsistent daily activities "may

provide a justification for rejecting symptom testimony," although "the mere fact that a plaintiff has carried on certain daily activities [. . .] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted). The Ninth Circuit recognizes two grounds upon which inconsistencies between symptom allegations and daily activities may establish clear and convincing reason to discount a claimant's credibility: (1) when those activities contradict the claimant's testimony, and (2) when those activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639; *See Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, [his or] her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'") (citation omitted).

The Commissioner contends that the ALJ reasonably found that Plaintiff's range of daily activities undermined the alleged severity of his subjective symptoms. AR 25-26. For example, the ALJ noted that Plaintiff engaged in a somewhat normal level of activity and interaction, including performing household chores, such as preparing his own meals, vacuuming, cleaning the dishes, doing the laundry, and grocery shopping. Dkt. No. 16 at 16 (citing AR 25). Further, the ALJ noted that Plaintiff engaged in physical exertion, such as walking in the park, home exercises for his physical therapy program, riding an exercise bike (standard and recumbent), and doing yard work. AR 25. The ALJ also noted that Plaintiff was able to drive, even with his alleged knee and back pain and had travelled to a lake in 2022 (where he injured his right knee). AR 25 (citing AR 1179). The ALJ explained that these activities reflect a significant functional capacity and not an individual unable to sustain regular and continuing work due to medical impairments. AR 26. The ALJ further explained that the physical and mental capabilities requisite

to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment. AR 26.

It is clear from the opinion that the ALJ thoroughly considered Plaintiff's testimony, found Plaintiff's daily activities as *one* reason the record does not support the severity of Plaintiff's alleged symptoms, and concluded Plaintiff was not as limited as alleged. AR 25. As such, the ALJ's assessment of Plaintiff's daily activities was another appropriate basis to discount his subjective asserted limitations.

**d) Plaintiff's Improvement with Treatment**

The Commissioner argues that the ALJ found that Plaintiff's pain improved with treatment which was another reason to discount his subjective symptoms. Dkt. No. 12 at 17, 18 (citing AR 29). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability," and an ALJ may discount a claimant's reported symptoms if they sufficiently improved with treatment. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

In finding that Plaintiff's symptoms sufficiently improved with treatment, the ALJ pointed to evidence where Plaintiff had reported that a twelve-week course of physical therapy in 2022 provided some relief of his back pain, and he continued to use the stretches for flare-ups, AR 27 (citing AR 565); a 2022 lumbar epidural steroid injection relieved 70% of Plaintiff's pain within two weeks, AR 27 (citing AR 568); and in July 2022 Plaintiff's medication moderately decreased his back pain, without adverse effects, AR 28 (citing AR 1004). The ALJ also noted that on February 20, 2024, Plaintiff reported that his right knee symptoms had improved, contributing to his ability to walk further distances, he had no pain, and was not taking any medication. AR 29. The ALJ explained that although Plaintiff is likely to

have some pain and limitations, the objective medical records do not support the extent Plaintiff has alleged. The ALJ further explained that Plaintiff has a significant ability to sit, stand, walk, lift and carry, based on the objective physical examinations which show he had improvement with treatment. AR 29. Accordingly, improvement with treatment was a clear and convincing reason to discount Plaintiff's testimony.

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony. *Trevizo*, 871 F. 3d at 675. Under the relevant standard of review, "[i]f the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, th[is] court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). As such, the Court finds substantial evidence supporting the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1110.

**B. The ALJ Properly Rendered Plaintiff's RFC**

**1. Applicable Law**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. The ALJ, not the claimant's physician, "is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149.

Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

The applicable regulations governing how an ALJ must evaluate medical opinion evidence are those for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under these regulations, special deference is no longer given to the opinions of treating and examining physicians on account of their relationship with a claimant, and an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("the requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is [ ] incompatible with the revised regulations") (citation omitted); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from [a claimant's] medical sources."). The new regulations require ALJs to consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. *See* 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2),

416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.' " *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)); 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); 20 C.F.R. § 416.920c(c)(2). While the ALJ's decision must articulate how the ALJ considered supportability and consistency, the decision need not explain the remaining factors unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792.

An RFC is defective if it fails to take a plaintiff's limitations into account. *Valentine v. Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (noting that "components of an RFC assessment" need not necessarily "line up with an expert medical opinion"); *see also McIntosh v. Colvin*, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC."). Finally, it is well established that RFC determinations are legal decisions, not medical opinions. *Valerie C. v. Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

**2. Analysis**

Plaintiff argues that the ALJ erred in rendering the RFC because she failed to provide accommodation for Plaintiff's usage of a cane and for any mental work restrictions. Dkt. No. 12 at 18-23. Plaintiff argues that the ALJ,

who also heard and decided this case in September 2023, previously found that "Plaintiff required a cane for balance and ambulation." *Id.*, at 19 (citing AR 137). Plaintiff argues that nothing has changed between the first and second decisions suggesting that Plaintiff no longer needed the cane for balance and ambulation. *Id.*

The Commissioner counters that the Appeals Council remanded the 2023 decision upon finding in part, that "the evidence indicates that [Plaintiff] did not use a cane or other assistive device for about the first 1½ years of the period at issue and still does not require a cane for balancing and ambulating at all times." Dkt. No. 16 at 20 (citing AR 153; *see also* AR 152-54). The ALJ abided by the Appeals Council's direction by seeking new and additional evidence concerning Plaintiff's use of cane, including records from 2023 through 2024. *Id.* (citing AR 1201-2010; *see also* AR 33-40, 145-49 [exhibit lists for 2023 and 2024 decisions]). Further, at the May 2024 hearing, the ALJ specifically asked Plaintiff if he was still using a cane when he walked and learned that Plaintiff only used a cane when experiencing back or leg pain from "walking a lot." AR 2025. Accordingly, the ALJ found that the new and additional evidence established that an RFC limitation concerning a cane was not required.

Next, Plaintiff argues that the ALJ erred in not incorporating the mild mental limitations found at step two into the RFC determination. Dkt. No. 12 at 20-21. The ALJ found that Plaintiff had limitations in "interacting with others" and in "concentrating, persisting or maintaining pace." AR 22-23. The ALJ found the assessments of the State Agency psychological consultants, who opined that Plaintiff had similar limitations, persuasive. AR 30 (citing AR 67, 84, 102, 118). The ALJ explained that limitations identified in the "paragraph B" criteria at step two are not an RFC assessment. AR 23. Further, the ALJ explained that because Plaintiff's medically determinable

mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Plaintiff's ability to do basic work activities, they are nonsevere. AR 23.

Plaintiff relies on *Hutton v. Astrue*, where, in an unpublished decision, the Ninth Circuit held that an ALJ erred by failing to consider the claimant's post-traumatic stress disorder ("PTSD"), even though non-severe, when he assessed the RFC. 491 F. App'x 850 (9th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]' ").) The court held that while the ALJ was free to reject claimant's testimony as not credible, "there was no reason for the ALJ to disregard his own finding that [claimant's] nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Id.* at 851. Plaintiff urges this Court to follow the "[n]umerous courts in this Circuit [that] have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations found at step two in the assessment of the claimant's RFC." Dkt. No. 12 at 21 (citing, *Kari P. v. Saul*, Case No. 19-cv-0956 JLB, 2020 WL 6889202, *8 (S.D. Cal. Nov. 23, 2020)).

Recently, however, '[o]ther district courts have distinguished *Hutton*, ruling that if the ALJ (1) states that he/she considered whether the claimant's mild mental limitations would cause functional limitations and determined they would not; and (2) substantial evidence supports that determination, then the ALJ's decision must be affirmed on appeal." *Urzua v. Comm'r of Soc. Sec.*, No. 2:23-cv-2772 EFB, 2025 WL 565624, at *4 (E.D. Cal. Feb. 20, 2025) (quoting *Hilda V. A. v. Kijakazi*, No. 5:22-cv-1064 KES, 2023 WL 1107867, at *3 (C.D. Cal. Jan. 30, 2023) (collecting cases), *aff'd sub nom. Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877 (9th Cir. Feb. 14, 2024)).

The Commissioner argues that the ALJ was not required to incorporate Plaintiff's mental limitations, rated as mild in severity at step two, into the RFC. Dkt. No. 16 at 21-22. In *Woods v. Kijakazi*, the Ninth Circuit found no error where the ALJ assessed mild limitations in two of the four functional categories but included no mental limitations in the RFC. 32 F.4th at 794. In so holding, the court noted that "Woods does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Id.* The Ninth Circuit found the ALJ's decision procedurally sufficient, even though the ALJ neither accommodated Woods's mild mental limitations in the RFC nor explained why accommodation was unnecessary. Following *Woods*, courts have concluded: "Simply put, there is no requirement that mild limitations be incorporated into the RFC." *Stoy v. O'Malley*, No. 1:24-CV-00131-GSA, 2024 WL 4752438, at *5 (E.D. Cal. Nov. 12, 2024).

Here, the ALJ considered the mild mental limitations identified at step 2 but determined they did not merit inclusion in the RFC. AR 30. The ALJ considered the prior administrative medical findings of the State agency review psychologists who opined no severe mental limitation persuasive. AR 30 (citing AR 67, 84, 102, 118). The ALJ highlighted that their noted limitations are reasonably supported by the available evidence of record, which showed no mental health treatment, and mental status evaluations by Plaintiff's medical providers were within normal limits. AR 30 (citing AR 550, 555-56, 566, 568, 621, 631, 649, 667, 710, 847, 853, 904, 954, 1005, 1009, 1046, 1098, 112-21, 1172, 1522, 1530, 1538, 1547, 1562). In addition, the ALJ explained that the prior administrative findings are supported by objective medical evidence and are consistent with evidence from other sources and supported by the record including Plaintiff's testimony that he has found a balance and can keep it together as far as his mood. AR 30.

Based on the overall record — including the medical evidence, Plaintiff's treatment history, his reports and testimony, and the opinion evidence, which the ALJ found partially persuasive for the reasons and to the extent cited — the ALJ found that Plaintiff retains the RFC to perform a range of light work with specified limitations. AR 24-30. Again, while Plaintiff may have a different interpretation of the medical evidence, he does not show that the ALJ's interpretation was error. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). A decision to deny benefits will be overturned only if it is it not supported by "substantial evidence or it is based on legal error." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Accordingly, the RFC set by the ALJ is supported by substantial evidence and the Court finds no reversible error in the assessment of Plaintiff's RFC. *Coleman*, 979 F.3d at 755; *Biestek*, 139 S. Ct. at 1154.

**C. The ALJ Had No Duty to Further Develop the Record**

Plaintiff argues that the ALJ should have further developed the record by seeking an updated medical opinion about Plaintiff's abilities. Dkt. No. 12 at 23. Plaintiff argues that the medical record contained no medical opinions about Plaintiff's functioning after September 21, 2022. *Id.* The Commissioner counters that no ambiguity or inadequacy in the record existed and the agency already assisted Plaintiff in developing the evidence by first asking for and receiving years of medical records from his providers, including records through 2024. Dkt. No. 16 at 24 (citing AR 536-2010). The Commissioner citing *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021), argues that ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make an RFC determination.

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia v. Comm'r of Soc.*

*Sec.,* 768 F.3d 925, 930 (9th Cir. 2014) (citation and internal quotation omitted). However, it remains Plaintiff's burden to prove he is disabled. *See Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (as amended). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459–60. To the extent that Plaintiff believes that an additional testimony or records might have yielded findings more helpful to his claim, his speculation does not establish any duty to develop the record, and he cannot shift his burden of proof to the Commissioner in this way. *See Mayes*, 276 F.3d at 459-60 (rejecting contention that ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from claimant). To impose a duty on the ALJ to develop the record, when it was not triggered in the first place, would shift Plaintiff's burden to the ALJ. *See Mayes*, 276 F.3d at 459. Accordingly, the Court finds there is no merit to Plaintiff's contention that the ALJ should have further developed the record.

**D. The ALJ Did Not Err at Step Five**

Plaintiff argues that the ALJ erred at step five in finding that Plaintiff could perform work existing in significant numbers in the national economy. Dkt. No. 12 at 25 (citing AR 31). The ALJ concluded that Plaintiff could perform work as a school bus monitor, investigator dealer accounts, and school crossing guard. AR 31, *see* DOT No. 241.367-038, 1991 WL 672258; DOT No. 371.567-010, 1991 WL 673079; DOT No. 372.667-042, 1991 WL 673102.

Plaintiff argues that the occupations of school crossing guard and school bus monitor are not full-time work. A school crossing guard "guards street crossings *during hours when children are going to or coming from school.*" DOT No. 371.567-010, 1991 WL 673079 (emphasis added). Similarly, a school

bus monitor monitors children on a school bus coming to and from school. DOT No. 372.667-042, 1991 WL 673102. Plaintiff argues that these job activities, with such limited and specific times, do not occur on a full-time basis. Dkt. No. 16 at 25-26. Plaintiff, citing *Few v. Comm'r of Soc. Sec.*, 2:19-cv-1491-KLN, 2021 WL 1103706, *6 n. 6 (E.D. Cal. March 23, 2021), acknowledges that the Ninth Circuit has not yet ruled on whether the Commissioner can rely on the availability of part-time jobs to satisfy the step five burden to show that the claimant can perform substantial gainful work activity existing in significant numbers.

The Commissioner counters that the VE Karen Franz, M.S. C.R.C. identified national jobs that constituted full-time substantial gainful activity, even assuming the school crossing guard and school bus monitor occupations were part-time jobs. Dkt. No. 16 at 23 (citing AR 31, 2035). The RFC ordinarily contemplates an individual's ability to perform sustained work activities on a regular and continuing basis, which is defined as "8 hours a day for 5 days a week or an equivalent work schedule." *See* SSR 96-8p, available at 1996 WL 374184 at *1. The Commissioner asserts that VE Franz, who had 30 years of experience in vocational rehabilitation consulting and served as a Social Security VE since 2021, had undisputed foundation to recognize an individual's ability to perform sustained work activities on a regular and continuing basis. Further, the VE's response to the hypothetical questions concerned jobs in the national economy that corresponded to Plaintiff's RFC to engage in substantial gainful activity. AR 519-20, 2033-35. Thus, the ALJ reasonably found that VE Franz's testimony concerning representative occupations in the national economy constituted substantial evidence. *See Twila D.B. v. Kijakazi,* No. 2:20-cv-06304-AFM, 2022 WL 425936, at *8 (C.D. Cal. Feb. 10, 2022) (rejecting claimant's argument that the VE failed to restrict her testimony to full-time work); *Roderick L. A. G. v. Saul*, No. CV 20-

5727-RAO, 2021 WL 2590159, at *4 (C.D. Cal. June 4, 2021) (rejecting similar argument). Accordingly, the ALJ did not err at step five.

## IV. Order

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence. It therefore is affirmed. A separate judgment will issue.

IT IS SO ORDERED.

Dated: September 30, 2026

Patricia Donahue

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE